U.S. BANKRUPTCY COURT
FILED
TRENTON, NJ

2017 OCT 10 P 1: 48

BY
DEPUTY CLERK

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
CASE NO: 16-20588 KCE
CHAPTER 7
JUDGE KATHRYN C. FERGUSON

Hearing Date : October 17, 2017

KML Law Group, PC
By: Denise Carlton, Equire
216 Haddon Avenue, Ste 406
Westmont, NJ 0818
215-627-1322
Attorneys for Movant: JPMORGAN CHASE BANK

In Re:

   Helena Litvak- Debtor/Respondent
   Pro se

## CERTIFICATION IN OPPOSITION FOR DEBTOR

HELENA LITVAK
34 Desbrosses Street Apt 205
New York, NY 10013
215-7153428
e_glikin@hotmail.com
Pro se

<u>Facts to Support Defense</u>

The initial cause of my bankruptcy was immediate and extremely substantial decrease of Alimony and Child Support without prior warning or time to re structure my and my child's life and associated costs accordingly.

April 15, 2015, my ex husband Elijahu Litvak claimed "Prima Facie" that his business Outpost Research Development LLC, in which I, the debtor, hold 10%, lost the main customer of 13 years Alexander Sokol, Compatibl.

We started post divorce litigation in which I, debtor had no other choice as to proceed as Pro se and Ex husband was represented by John Eory Stark Stark law firm. Please take a look at history of all Judgments.

The list of Judgments, Orders and Rulings

Exhibits:
DUAL FINAL JUDGMENT AGREEMENT entered December 11, 2011............    (A)
ORDERS JUDGE M. THOMAS BROWN entered August 21, 2015.................    (B)
BANKRUPTCY DISCHARGE ORDER CHAPTER 7 entered Sept 8, 2016........    (C)
ORDERS JUDGE LISA ADUBATO entered January 10, 2017......................    (D)
ORDERS JUDGE LISA ADUBATO entered March 30, 2017..........................    (E)
ORDERS JUDGE ROBERT LOUGY entered May 19, 2017............................    (F)
ORDERS JUDGE ROBERT LOUGY entered July 7, 2017..............................    (G)
ORDERS JUDGE ROBERT LOUGY hearing date Sept 29, 2017................PENDING
APPEAL BRIEF IS SUBMITTED.........................................................PENDING

The reasons for my failed payments for FIAT car :
Judge Adubato's Orders entered January 10, 2017 put me and my child in extreme and growing monthly deficit                                                                    (D )
Bankruptcy Discharge Order was not taken into consideration                    (C )
Minimum Alimony and child support amounts were decreased                    (D )
My imputed salary was higher than the real one.                                       (D )
Judge Adubato's orders explanation states that a mutual property 5 Hanover court, Princeton will be sold and it will no longer be my expense.                          (D )

However,

A mutual property on 5 Hanover court, Princeton remains on the market to date. During the summer we received 2 offers, both were declined by ex husband.

My obligation for Mortgage was in Bankruptcy petition and it was Granted. Mr Wolfson, my bankruptcy attorney confirmed it.

Discharge order was sent to Ocwen, our mortgage company. They replied that they have no problems with me because the Mortgage was/is in principle Ex husband name. My only obligation is page 3 of Addendum of Dual Final Judgments of Divorce. (A)

Ex husband continues to deduct $1,938 towards mortgage payment from Alimony and Child Support.
I currently pay rent in sum of $3,015 tiny studio and $1,938 Mortgage payment being deducted from monthly support by ex husband together putting me in extreme position of not being able to afford this obligation or change my situation.

I filed enforced Motion that Ex husband unlawfully withheld $1,938 starting from Sept 8, 2016 ( a date when Discharge Order entered ) from Child and Wife support.
Judge Lougy Order 5 ( exhibit F) states:

Defendant's application for an order enforcing litigant's rights and compelling plaintiff to pay $16,544 in child support and spousal support payment that he withheld in violation of prior orders of this Court is Denied.

I presume that Enforced Motion in Bankruptcy Court should have been filed yet I am not in position to afford a legal counsel who can advise me on my rights.

Family Court took away my opportunity to have a fresh start that was prior granted by Bankruptcy Court.

In order to survive and continue my legal battle, I had to borrow money from relatives and friends numerous times.
Andrey Glikin $1500
Stas Sokolov $600
Spencer Kimball $6500

In regards of my 10% interest of the Outpost Research Development LLC

Ex husband persistently refuses to comply with Judge Adubato order #10 (D) and Judge Lougy order #4 ( F) and provide me access and documentation to Outpost Research Development.

February, 2017 I received information that the companies have mutually settled. Ex husband verbally told that Mr Sokol, Compatibl paid a lump sum of $160,000 to Outpost Research and continue to pay $20,000 in monthly dividends for the next 3 years or possibly more.

I requested all documentation from the beginning of the dispute until the day it was settled in demand to receive agreed 10% of shares of my interest in the settlement.

Ex husband represented multiples failures to comply with the orders and provide any documentation and pay off any sum of my dividends .

Ex husband verbally stated that he is paying my Bankruptcy Trustee, Andrea Dobkin 10% of $20,000 off the monthly dividend amount. I requested to provide supported documentation and never received any response.

Currently, I have no access and information to my 10% interest in Outpost Research Development. I claim that it was stolen by ex husband and Alexander Sokol, Compatibl.

Conclusion

When I was signed Fiat reformation agreement. I followed Discharged Order that did not included $1,938 mortgage payment in my expense list. The payment was in Bankruptcy petition list and it was Granted.

I am respectfully asking Bankruptcy Court to Enforce Discharge order in regards of Mortgage 5 Hanover Court, Princeton NJ 08540 property and released me from $1,938 payment, so we will be able to keep our little Fiat with the child.

Respectfully submitted,

Helena Litvak

Helena Litvak
10/07/2017

# EXHIBIT  A



**LAW OFFICES OF EDWARD R. WEINSTEIN, L.L.C.**
Weinstein Professional Building
214 Highway 18 North, Suite 2A
East Brunswick, New Jersey 08816
732-246-0909
Attorney for Plaintiff, Elijahu Litvak



| | |
|---|---|
| **ELIJAHU LITVAK,** | SUPERIOR COURT OF NEW JERSEY |
| Plaintiff, | MERCER COUNTY |
| | CHANCERY DIVISION – FAMILY PART |
| v. | DOCKET NO.: FM-11-516-11B |
| **HELENA LITVAK,** | CIVIL ACTION |
| Defendant. | **DUAL FINAL JUDGMENT OF DIVORCE** |

This matter coming on to be heard on December 15, 2011, in the presence of

Kaitlin Kennedy, Esq., of the Law Offices of Edward R. Weinstein, L.L.C., attorneys for

the Plaintiff, Elijahu Litvak; and in the presence of Hanan M. Isaacs, Esq. of Hanan M.

Isaacs, P.C., attorney for the Defendant, Helena Litvak; and the Court having read and

considered the Complaint and Counterclaim; and it appearing that Plaintiff and

Defendant were married on June 15, 1996, and the parties having pleaded and proved a

cause of action for Divorce under the statute in such a case made and provided, and the

the State of New Jersey having acquired jurisdiction over the parties pursuant to the

Rules governing the Courts;

Thereupon, it is on this 15th day of December, 2011, by the Superior Court of

New Jersey, Chancery Division, **ORDERED AND ADJUDGED**; and the said Court by

virtue of the power and authority of this Court and of the acts of the legislature in such

case made and provided does hereby **ORDER AND ADJUDGE** that said Plaintiff,

Elijahu Litvak, and said Defendant, Helena Litvak, be divorced from the bonds of

matrimony for the causes stated in the Complaint and the Counterclaim and the said parties and each of them be freed and discharged from the obligations thereof; and it is

FURTHER ORDERED that the Marital Separation and Property Settlement Agreement dated September 14, 2006 attached hereto as Exhibit J-1 and the Addendum to the Marital Separation and Property Settlement Agreement entered on December 15, 2011 attached hereto as Exhibit J-2 are hereby made a part of this Dual Judgment of Divorce and shall not merge with but shall survive this Dual Judgment of Divorce and the parties are hereby directed to comply with the terms of said Agreement and Addendum. The Court has not taken testimony as to the merits of the Agreement or Addendum but finds that it was entered into freely and voluntarily by the parties.

_____
Honorable Lawrence P. DeBello, J.S.C.

We hereby consent to the entry of the within Dual Final Judgment of Divorce.

_____
ELIJAHU LITVAK
*Plaintiff*

_____
KAITLIN KENNEDY, ESQ.
*Attorney for Plaintiff*

_____
HELENA LITVAK
*Defendant*

_____
HANAN M. ISAACS, ESQ.
*Attorney for Defendant*

## Marital Separation and Property Settlement Agreement between Elijahu Litvak and Helena Litvak

AGREEMENT, made this 14ᵗʰ day of September, 2006, between Elijahu Litvak (hereinafter referred to as Husband) and Helena Litvak (hereinafter referred to as Wife).

### EXPLANATORY STATEMENT

The parties were married in Minsk, Belarus, on June 15, 1996, in a civil ceremony.

One minor child has been born of or adopted by said marriage, namely Alice Litvak, born April 21, 2001.

Differences have arisen between the parties and they are now and have been since July 05, 2004 living separate and apart from one another, voluntarily and by mutual consent, with the purpose and intent of ending their marriage.

It is the desire of both parties in this Agreement to determine, settle, and formalize their duties and obligations to each other and any issues regarding custody of their child, alimony, their respective rights in the property or estate of the other, and in property owned by them jointly or as tenants by the entireties and in marital property, and all other rights, claims, relationships or obligations between them arising out of their marriage or otherwise, and each party having general knowledge of the properties owned by them separately and jointly and of their respective means, obligations and needs.

NOW, THEREFORE, in consideration of the promises and mutual covenants and understandings of each of the parties, they each hereby mutually agree to the following:

### 1: SEPARATION

It shall be lawful for each party at all times hereafter to live separate and apart from the other party at such place or places as he or she may from time to time choose or deem fit.

The parties shall not molest or interfere with each other, nor shall either attempt to compel the other to cohabit or dwell with him or her, by any means whatsoever.

### 2. CUSTODY AND VISITATION

GENERAL. Each party agrees to foster in the mind of their child attitudes of respect and love for both of the parents. Each party agrees not to denigrate the other party in the eyes of their child nor to attempt to alienate their child from the other party.

Each party agrees to keep the other party fully informed as to the status of the health of the child and to consult with the other party on the major problems and decisions affecting the child, including the schools which the child will attend; the religious instruction the child shall receive; the health care the child shall receive; the manner in which the child shall be disciplined; the extent of any travel of the child away from home; and any other decisions affecting the child's growth and development, to the end that their child will have, as much as possible, the benefit of two parents.

The parties further agree to exert every reasonable effort to maintain free access and unhampered contact between each of them and the child.

The parties state that the best interests and welfare of the child are of paramount consideration for both of them. They shall make every effort to foster the respect and affection of the child for

each other and shall do nothing which would in any way estrange the child from the other party, or which would injure the opinion of the child for the other party, or which would hamper the free and natural development of the love and affection of the child for the other party.

Each party agrees to notify the other of any change in address or telephone number.

CUSTODY.  The parties have carefully weighed their decision regarding the custody of their minor child, and in so doing have been guided solely by considerations touching upon said child's welfare.  The parties have concluded that it is in the best interest of said child that the Wife, as sole managing conservator or primary custodial parent, shall have sole custody, full parental rights, duties and powers, subject only to the Husband as secondary custodial parent, who may visit with and temporarily take possession of the child as specified below.

VISITATION.  The Husband shall have liberal visitation with the child with reasonable notice to the Wife.

The parties agree that during the time each of them has the child in his or her physical possession, that parent shall decide all routine matters concerning the child's welfare, medical needs, etc.  The parties further agree to cooperate with one another in establishing a mutually-supportive arrangement regarding such routine decisions.

Both parties shall be informed at all times of the residence of the child, and each party shall notify the other immediately of any illness or emergency that may arise while the child is in his or her custody.

The parties agree that the child shall not be removed from the area for a period of more than one week without the notification of the other party.

The parties agree that each parent shall be entitled to immediate access from the other, or from a third party, to records and information pertaining to the minor child, including, but not limited to, medical dental, health, school, or educational records.

Each party shall be entitled to speak to the child by telephone at reasonable times and intervals when the child is in the custody or subject to the control of the other party.

CHANGE OF NAME.  Notwithstanding the possible remarriage of either party, the minor child of the parties shall continue to be legally and publicly known by the names in use as of the date of this Agreement.  The child shall not, for any reason or purpose, use or assume the name of any subsequent spouse of either party or any other surname.  The parties shall see to it that the designations "father" and "mother" or their equivalent shall be used by the child to refer to the parties hereto and to no other person.

## 3. SUPPORT AND MAINTENANCE OF THE MINOR CHILD

Subject to the power of the court to modify these terms, the Husband shall pay to the Wife for the support and maintenance of the minor child of the parties 20% of his gross income, but not less than $2500 and not more than $5000 per month, in advance, commencing October 01, 2006, and continuing per month thereafter, provided that such payments shall cease for the child as he or she reaches the age of eighteen (18), marries, becomes emancipated, becomes self-supporting, or dies, whichever occurs first, unless noted elsewhere in this Agreement.

Said child support shall be adjusted at such time as the obligation to support each child ends. Said child support payments shall also be adjusted each year consistent with the percentage changes in the Husband's income from the previous year, less any applicable expenses and/or deductions.  To satisfy the Wife of the change in the Husband's income, the Husband or his accountant shall provide the Wife a copy of his Federal income tax return each year.  Such efforts shall end when all child support obligations have terminated, unless otherwise required.

In the event of the remarriage or cohabitation of the wife the said payment should increase to 30% of the husband's gross income.

09/20/2011 TUE 8:10 FAX

☒008/017

SUMMER CAMP. The Husband shall pay fifty percent (50%), and the Wife shall pay fifty percent (50%), of all costs for each child to attend summer day camp through age eighteen (18). The selection of which summer day camp each child shall attend shall be made by mutual agreement, prior to application and prior to enrollment, after consultation between the Husband, the Wife, and the child. Payments will be made directly to the camp, immediately upon either party's receipt of documentation which sets forth the total expense.

### COLLEGE EDUCATION FOR THE CHILD

COLLEGE DEFINED. For purposes of this section, the meaning of the term "college," "university," or "technical school" shall mean any accredited post-secondary educational institution not exceeding four consecutive years of undergraduate work.

In case of the child having the aptitude and opportunity for a college education or comparable post-high-school training, the Husband shall be responsible to pay one hundred percent (100%), and the Wife shall be responsible to pay zero percent (0%), of the costs equivalent to the cost of an in-state four-year undergraduate education at a public college in the state where the minor child resides at the conclusion of his or her primary education (typically high school). These funds shall be paid directly to any college or appropriate third-party associated with the incurred cost, or to the appropriate party (Husband, Wife, or minor) as reimbursement of a qualifying cost, only when copies of related receipts are shared between the parties.

This clause shall not specifically restrict the minor's rights to attend an out-of-state secondary institution, only to restrict the agreed financial obligation of the Husband and Wife.

For purposes of this Agreement, the term "cost of an in-state four-year undergraduate education" includes, but is not limited to, tuition and other enrollment or matriculation fees and charges, all attendant fees and expenses, whether charges for attendance in general or by virtue of enrollment in a special course or program, room and board, reasonable transportation charges, books and other expenses reasonably and necessarily incurred and relating to enrollment and/or attendance in such colleges, universities, or technical schools.

The selection of which college, university, or technical school the child shall attend shall be made by the Wife and the child, prior to application and prior to enrollment, and shall be made with and after due consideration of the financial circumstances and resources of the Wife and the child.

### 4. ALIMONY

WAIVER. In consideration of the terms of this Agreement, the provisions contained herein for the respective benefit of the parties, and for other good and valuable consideration, the Husband hereby releases and discharges the Wife, absolutely and forever, from any claim or right to receive from the Wife temporary, definite, or indefinite alimony, support, or maintenance for the past, present or future. The Husband acknowledges that this Paragraph has been explained to him and that he understands and recognizes that, by the execution of this Agreement, he cannot at any time in the future make any claim against the Wife for alimony, support, or maintenance of any kind whatsoever for himself.

The parties acknowledge that the Wife does not permanently waive any rights or claims to receive temporary, definite, or indefinite alimony, support, or maintenance for the past, present or future.

PAYMENT. The Husband shall pay to the Wife as alimony 40% of his gross income, but not less than $4000 and not more than $12000 per month, in advance, commencing October 01, 2006, and continuing per month thereafter, as long as the parties shall remain separate and apart, until the first occurrence of: the death of the Husband, the death of the Wife, or the remarriage of the Wife.

@009/017

Said alimony payments shall be increased annually consistent with the percentage of increases in the Husband's salary from the previous year. To satisfy the Wife of the increase in the Husband's salary, the Husband or his accountant shall provide the Wife a copy of his Federal tax return each year.

In the event if the Wife obtains employment, the alimony shall decrease in the amount of 30% of the Wife's gross salary.

TAX CONSEQUENCES. It is the intention of the parties that for Federal, State, and local income tax purposes, the payments made in accordance with this Agreement shall be taxable as income to the Wife and deductible as alimony, maintenance, or spousal support by the Husband.

## 5. MEDICAL INSURANCE

GENERAL. The Husband shall maintain major medical hospitalization insurance for the benefit of the Wife and the minor child of the parties.

The Husband shall pay fifty percent (50%), and the Wife shall pay fifty percent (50%), of all medical, dental, or orthodontia expenses for the benefit of the minor child which are not covered by said insurance. This is to include all emergency medical treatment. Said obligations for expenses shall continue until said child is eighteen (18) years of age.

TERMINATION. The insurance for the benefit of the Wife shall be terminated upon either the remarriage of the Wife or the acceptance of the Wife of coverage under another health insurance plan. Insurance benefits for each minor child of the parties shall terminate when the child reaches the age of eighteen (18).

The parties agree that should health insurance no longer be available to the Husband or should health insurance become available to the Wife, the parties will negotiate this portion of this agreement at that time. The parties agree that neither shall take any action causing the termination of the family's or parties' eligibility.

TERMINATION. The husband also guarantees payment of up to $10,000 in dental or orthodontia expenses to complete the ongoing crown restoration that the wife undergoes as of September 14, 2006.

## 6. DISPOSITION OF PROPERTY

MARITAL REAL PROPERTY. The parties own as tenants by the entirety, in fee simple, the property known as 5 Hanover Ct, Princeton, New Jersey 08540, which is presently occupied by the Wife.

It is the intention of the parties that they presently continue to own the marital home jointly, become tenants-in-common upon being divorced, and to eventually sell the marital home. Therefore, the parties agree as follows:

The parties agree that the marital home is valued at approximately Four Hundred And Twenty Thousand Dollars and Zero Cents ($420,000.00), and that it currently holds one (1) lien, valued at approximately Four Hundred And Ten Thousand Dollars and Zero Cents ($410,000.00). Therefore, the parties agree that the current equity in the marital home is approximately Ten Thousand Dollars and Zero Cents ($10,000.00).

The Wife shall be entitled to sole possession of said premises (rent-free).

The parties shall cooperate fully to promptly sell the marital home within six months.

Expenses associated with the ownership and/or occupancy of the marital home shall include the mortgage, taxes, insurance, repair costs and every other cost associated with the maintenance of the property. The Husband's share of said expenses shall be fifty percent (50%) and the Wife's share of said expenses shall be fifty percent (50%).

In the event the parties cannot agree upon a sale price, they shall choose a licensed real

🗹010/017

estate agent in the county where the property resides (or an adjacent county), and list the property for sale at a price which is five percent (5%) higher than its fair market value as determined by a licensed real estate appraiser. If the parties cannot agree upon a listing agent, they shall each choose a real estate agent in the county where the property resides (or an adjacent county), and the two said agents shall together choose a third real estate agent. The three (3) real estate agents shall decide upon a listing price which is five percent (5%) higher than the fair market value of the property as determined by the real estate appraiser. In the event the parties cannot obtain the desired sale price within ninety (90) days after listing the property, they shall accept the first offer that is at least ninety percent (90%) of the designated listing price. The parties shall bear equally the cost, if any, of effectuating the sale, including the real estate agents' fees and seller's settlement costs.

Neither party shall refuse to execute a contract for sale on the above terms or impose unreasonable conditions for the consummation of a contract of sale.

Any and all Deeds of Trust, liens, closing costs, including attorney's fees, and real estate commissions shall be paid from the proceeds of sale before any distribution is made therefrom.

The Husband shall receive fifty percent (50%) of all remaining monies received from the sale and settlement of the Property, after payment of all encumbrances and after deduction of all costs of settlement; and the Wife shall receive fifty percent (50%) of said proceeds. Each party shall be individually responsible for any capital gains taxes owed on these profits, as well as individually responsible for any penalties incurred by failing to report his or her share of these settlement proceeds in future tax filings, as required by law.

When applicable, this Agreement acts as an authorization and directive to the settlement attorney to issue separate checks to the Wife and the Husband pursuant to the details of this section of this Agreement.

The parties each agree that while they own the said property as tenants-in-common, neither of them may, without the written consent of the other, sell his or her respective half interest in the said property, but, subject to the terms and conditions of this Agreement, either party may force the sale in lieu of partition of the said entire property.

Until the house is sold, parties agree to be jointly and equally responsible for all payments associated with the house ownership including mortgage payments, insurance, property tax, utility bills, association fee etc.

PERSONAL PROPERTY. The parties agree with respect to their personal property as follows:

The parties are joint obligors on a lease of a 2006 Mercedes-Benz E500, leased to the parties by Mercedes-Benz USA. The Husband agrees to maintain payments current on said lease and to hold Wife harmless as to any obligation thereon. In the event the Wife becomes liable for any undischarged lease payments, the Husband shall transfer title of whatsoever automobile which he owns at that time to the Wife. At the discretion of the Wife, this property can then be sold, with the proceeds used to pay the undischarged lease payments.

The parties are joint obligors on a lease of a 2004 Saab 9-3, leased to the parties by Saab USA. The Wife agrees to maintain payments current on said lease and to hold Husband harmless as to any obligation thereon. In the event the Husband becomes liable for any undischarged lease payments, the Wife shall transfer title of whatsoever automobile which she owns at that time to the Husband. At the discretion of the Husband, this property can then be sold, with the proceeds used to pay the undischarged lease payments.

The parties agree that the Husband shall have as his sole property any belongings he brought into the marriage.

The parties agree that the Wife shall have as her sole property any belongings she brought into the marriage.

Except where otherwise specified in this Agreement, the parties shall divide between them, to their mutual satisfaction, all furniture and household furnishings, and all other items of personal property which heretofore have been held by them in common, jointly, or as tenants by the entirety, and neither party will make any claims to any such items which are agreed to be owned by the other.

COMMON FINANCIAL ASSETS.

The Wife will retain 10% of ownership of Outpost Research and Development LLC and the Husband will retain 90%. Wife agrees not to claim any distributions from the said company except through the alimony and child support payments specified above.

Except where otherwise specified in this Agreement, the parties shall divide all joint checking and savings accounts, all stocks, all certificates of deposit, all bonds, all mutual funds, and all other common financial assets which are legally marital property, whether titled in one or both parties' names. Once divided to the satisfaction of both parties, neither party shall make any claims on the other party's common financial assets, unless such claim can be reasonably considered appropriate compensation for the breach of some other clause of this Agreement, or unless such claim is proper pursuant to a separate amendment, contract, or legal action.

OTHER PROPERTY. The parties represent and acknowledge that there is no other property, real or personal, which is owned jointly or in which both have an interest, and hereafter neither party will make any claim to any item which is in the possession of the other. Each party shall own, have and enjoy independently of any claim or right or the other, all items of property, real or personal, of every kind now or hereafter owned or held by him or her with full power to dispose of same as fully and effectively in all respects and for all purposes as if he or she were unmarried.

## 7. LIFE INSURANCE

The Husband shall maintain at least one life insurance policy, in the amount of $400,000 until September 14, 2016, copies of which will be supplied to the Wife upon execution of this Agreement, naming the Wife as trustee for the parties' child, who will be named beneficiary.

The Wife shall have the right to name any person or organization whom she chooses as beneficiary on any life insurance policies held presently or in the future.

## 8. RETIREMENT BENEFITS

The parties acknowledge that there are no retirement benefits or privileges earned by either party before or during this marriage.

The parties acknowledge that there are no Individual Retirement Accounts currently possessed by either party.

The Husband and the Wife agree that any payments to the other party, specified in this section, will not be taxable to that party, as the payment will be received as a division of marital property of the parties. Each party pledges to cooperate with the other to secure approval of or execution of any documents that are necessary to transfer pension, 401(k) or IRA funds to the payee from the payor's accounts, if applicable.

## 9. ESTATE PLANNING

INHERITANCE. This agreement is not to address issues related to inheritance unless specified

in other sections.

ADMINISTRATION. This agreement is not to address issues related to probate estate planning unless specified in other sections.

## 10: DEBTS

GENERAL. The parties agree that they will not incur or contract any debt in the name of the other, or on the credit of the other, and will not pledge the other's credit in any manner after the execution of this Agreement; and that each shall hereafter be responsible for his or her obligations, except as set forth in this Agreement. Immediately upon execution of this Agreement, each of the parties shall do whatever is necessary to close immediately all joint accounts in the name of the Husband and the Wife or either of them under which one may make purchases on the credit of the other.

CREDIT-CARD DEBT. Each party agrees to retire the following joint credit-card debt in full and to hold the other harmless for same, as follows:

DCU, approximate balance Twelve Thousand Dollars and Zero Cents ($12,000.00), to be paid off within 2 years from the date of this Agreement. The Husband is to pay Twelve Thousand Dollars and Zero Cents ($12,000.00) toward the retirement of this balance, and the Wife is to pay nothing.

MBNA, approximate balance Six Thousand Dollars and Zero Cents ($6,000.00), to be paid off within 2 years from the date of this Agreement. The Husband is to pay Six Thousand Dollars and Zero Cents ($6,000.00) toward the retirement of this balance, and the Wife is to pay nothing.

First USA, approximate balance Five Thousand Dollars and Zero Cents ($5,000.00), to be paid off within 2 years from the date of this Agreement. The Husband is to pay Five Thousand Dollars and Zero Cents ($5,000.00) toward the retirement of this balance, and the Wife is to pay nothing.

Neiman Marcus, approximate balance Three Thousand Dollars and Zero Cents ($3,000.00), to be paid off within 2 years from the date of this Agreement. The Husband is to pay nothing toward the retirement of this balance, and the Wife is to pay Three Thousand Dollars and Zero Cents ($3,000.00).

Capital One, approximate balance One Thousand Dollars and Zero Cents ($1,000.00), to be paid off within 2 years from the date of this Agreement. The Husband is to pay nothing toward the retirement of this balance, and the Wife is to pay One Thousand Dollars and Zero Cents ($1,000.00).

OTHER JOINTLY-HELD DEBT. Each party agrees to retire the following jointly-held debt in full and to hold the other harmless for same, as follows:

Anatoly Litvak, approximate balance Seventeen Thousand Dollars and Zero Cents ($17,000.00), to be paid off within 3 years from the date of this Agreement. The Husband is to pay Seventeen Thousand Dollars and Zero Cents ($17,000.00) toward the retirement of this balance, and the Wife is to pay nothing.

Alexander Sokol, approximate balance Twenty Thousand Dollars and Zero Cents ($20,000.00), to be paid off within 8 years from the date of this Agreement. The Husband is to pay Twenty Thousand Dollars and Zero Cents ($20,000.00) toward the retirement of this balance, and the Wife is to pay nothing.

CREDIT HISTORY. The parties acknowledge and agree that the credit history established by them during their marriage shall be deemed to have been the credit history of both parties, notwithstanding ordinary practices of creditors and credit reporting agencies that may have reported such credit history in the name of the Husband only. The Husband agrees that he shall cooperate and execute any documents as may be required to enable the Wife to provide to her

prospective creditors the full credit history of the parties during the marriage. Nothing in this Agreement is intended or shall be deemed to create any liability for the Husband of debts or obligations incurred by the Wife arising out of the credit information provided to her.

**INDEMNIFICATION.** Except as otherwise specified herein, the parties agree that each will be responsible for his or her own debts and that neither will be responsible for the debts of the other. In the event that either party shall be called upon to answer for or to pay any debts or obligations of the other, then the Husband or the Wife, as the case may be, shall defend against the payment of such debt, and in the event the Husband or the Wife shall be required to pay, the opposite spouse shall exonerate and indemnify the Husband or the Wife against such debt, including all legal and proper costs, reasonable charges, and such damages as may have been caused by the failure to have paid such debt when due.

**COMPLIANCE.** At the request of the other, the parties shall at any time, and from time to time hereafter, execute, acknowledge and deliver to the other party any further instruments and assurances that may be reasonably required for the purpose of giving full force and effect to the provisions of this Agreement. If either party shall fail to comply with the provisions of this paragraph, this Agreement shall constitute an actual grant, assignment, and conveyance of the property and rights in such manner and with such force and effect as shall be necessary to effectuate the terms of this Agreement.

**MUTUAL RELEASE.** Except as otherwise provided by this Agreement, each party hereby covenants and agrees that he or she will not incur any debts, obligations, or liabilities on the other party's credit, nor do anything for which the other party might be legally liable or answerable. Each party covenants and warrants that there are no debts or obligations or any kind incurred by him or her and binding on the other party.

Except as otherwise provided by this Agreement, all property and money received and retained by the parties pursuant hereto shall be the separate property of the respective parties, free and clear of any right, interest, or claim of the other party, and each party shall have the right to deal with and dispose of his or her separate property, both real or personal, as fully and effectively as if the parties had never been married.

## 11. MISCELLANEOUS PROVISIONS

### EFFECTIVE DATE OF AGREEMENT

This Agreement shall be effective as of the date it is executed by both parties. All agreements and representations of the Husband and the Wife shall be deemed to have been made as of this date.

### REPRESENTATION

The parties each acknowledge entering freely and voluntarily into this Agreement, having each been represented and advised by separate licensed legal counsel in the negotiations for and preparation of this Agreement.

Each of the parties and their respective licensed legal counsel have had an opportunity to conduct a complete examination and review of all related records and documents, and the parties have had this Agreement fully explained to him or her by their respective counsel and are fully aware of its contents and its legal effect.

The Husband shall reimburse the Wife for all counsel fees incurred by the Wife in connection with the negotiation and preparation of this Agreement and all subsequent divorce proceedings.

Each party, whether or not represented by licensed legal counsel, enters freely and voluntarily into this Agreement.

If after the final divorce judgment has been entered, either party shall default in the performance of any of the obligations of this Agreement, or of any order or judgment, the other party may take action to lawfully recover his or her reasonable attorney's fees and costs from the defaulting party

or his or her estate.

## COSTS OF ENFORCEMENT

The parties agree that any costs, including but not limited to counsel fees, court costs, investigation fees, and travel expense, incurred by a party in the successful enforcement of any of the agreements, covenants, or provisions of this Agreement, whether through litigation or other action to compel compliance herewith, shall be borne by the defaulting party. Any such costs incurred by a party in the successful defense to any action for enforcement of any of the agreements, covenants, or provisions of this Agreement shall be borne by the party seeking to enforce compliance.

## TAX RETURNS

The parties shall file joint Federal and state income tax returns for the taxable year 2006. The parties shall share the costs incurred in the preparation of said income tax returns or any resulting tax liability in proportion to their respective incomes. In the event, however, that either party would be obliged to pay greater taxes for the year 2006 than if that party had filed separately, the parties shall file separately rather than jointly.

The Husband shall indemnify and hold harmless the Wife against all claims or loss, including reasonable attorney's fees, which the Wife may incur as a result of her agreement to file joint income tax returns with the Husband, and the Wife shall indemnify and hold harmless the Husband against all claims or loss, including reasonable attorney's fees, which the Husband may incur as a result of his agreement to file joint income tax returns with the Wife; the purpose of this paragraph being that each party shall pay for his or her own errors, omissions, or failure to report his or her income correctly.

At such time as the parties shall file separate Federal and State income tax returns, the Wife, as sole custodial parent (or sole managing conservator), shall be entitled to claim the deduction for the dependency exemption for their minor child, as long as either party is entitled to claim the dependency exemption under Section 152(e) of the Internal Revenue Code of 1954, as amended. The Husband agrees that he will sign Internal Revenue Service Form 8332 or any other declaration required by the Treasury Department or the Internal Revenue Service to implement this Agreement and agrees to provide such declaration to the Wife.

INTEREST DEDUCTIONS AND DEPRECIATION. At such time as the parties file separate Federal and State income Tax returns and as long as they own any real property described in this Agreement, the Husband shall receive fifty percent (50%) of the interest deductions and depreciation attendant thereto, and the Wife shall therefore receive fifty percent (50%) of the interest and depreciation attendant thereto.

CAPITAL GAINS. The parties acknowledge that they have not accrued any capital gains from the sale of any marital property during the previous tax year, or in the current tax year until the present, which have not yet been appropriately documented within State and Federal tax filings, as required by law. Other than any capital gains tax implications and responsibilities identified in Section 6 above, if future capital gains, associated with the sale or transfer of any marital property, are recognized, the parties agree that the Husband will pay fifty percent (50%) of all taxes due on these gains, and any and all interest and/or penalties that may become due upon that portion, and the Wife agrees to pay fifty percent (50%) of all taxes due on these gains, and any and all interest and/or penalties that may become due upon that portion.

COOPERATION REGARDING CLAIMS AND DEFENSES. The Husband and the Wife each agree to promptly notify the other in the event the Internal Revenue Service or any state or local taxing authority provides notice of an audit, deficiency, refund, or the adjustment regarding a tax return that was jointly filed or that should have been jointly filed. The party receiving such notice from a taxing authority shall provide a copy of the notice to the other party. The Husband and the Wife further agree to cooperate fully with the other in any claims for refunds or in defending against any deficiencies that may be determined with respect to joint income tax returns filed (or to be filed) for the calendar year 2005 and years prior. This includes, without limitation, the

Page 9 of 13

making, executing, and filing of amended income tax returns; applications for refunds, protests, and other instruments; and documents as may be required.

## RELEASE OF GENERAL CLAIMS

Except as expressly provided in this Agreement, each party hereby waives, releases, renounces, and forever discharges all other claims, causes of action, rights or demands, known or unknown, past, present or future, which he or she now or hereafter has, might have, or could claim to have against the other or any present or future property of the other by reason of the marital relationship or any matter, thing or cause whatsoever. Nothing in this Paragraph shall be deemed to prevent either party from enforcing the terms of this Agreement or from asserting any rights or claims expressly reserved to either party in this Agreement.

Nothing herein shall impair or waive any cause of action which either party may have against the other for dissolution of the marriage or any defenses either may have to any such cause of action.

The parties, by execution of this Agreement, have provided for a fair and equitable distribution of all property belonging to the parties.

## AUTOMOBILE INSURANCE

Each party shall be responsible for his or her own automobile insurance from the date of separation and thereafter, with no contribution required from the other party.

## SOCIAL SECURITY AND OTHER BENEFITS

Nothing in this Agreement shall constitute a waiver of either party's individual rights to receive Social Security or other governmental benefits (state, local and/or Federal) on his or her own account, as a widow, widower, or separated or divorced person, in consonance with applicable law.

## BINDING EFFECT

This Agreement shall be binding upon the parties, their heirs, administrators, executors and assigns.

## SUCCESSIONS

This Agreement shall inure to the benefit of the parties and their respective heirs, administrators, executors, successors, and assigns.

## GOVERNING LAW

This Agreement shall be governed by the law of the State of New Jersey. The Husband and the Wife consent to the jurisdiction of the Superior Court of the State of New Jersey for the purposes of enforcing the elements of this Agreement.

## ENTIRE UNDERSTANDING

This Agreement contains the entire understanding and agreement of the parties pertaining to these matters, and they shall not be bound by any representations, warranties, promises, covenants, or understandings other than those set forth herein. All prior agreements, understandings, or representations are hereby terminated and cancelled in their entirety and are of no further force. No amendment or modification of this Agreement or any Judgment or order based on it shall be valid unless signed by the Husband and the Wife or ordered by the court after duly noticed hearing.

## RELIANCE ON MATERIAL REPRESENTATIONS

The Husband and the Wife acknowledge that in entering into this Agreement, each has been induced to and is directly and materially relying in good faith on the truth and completeness of the representations and warranties expressly made by the other party to this Agreement. The parties have also either agreed to not exchange any financial statements and records, or upon agreement, have exchanged sworn Financial Disclosure Affidavits (Statements of Net Worth) and

09/20/2011 TUE 8:13 FAX                                                    ☎016/017

other financial data including, but not limited to, joint Federal and State Income Tax Returns, W-2 Wage and Tax statements, data regarding the benefits from employment, pension information, bank statements, checking account statements, and credit card bills, as well as other miscellaneous business and personal financial data.

## MODIFICATION

The parties at any time may, by mutual consent, amend or modify the terms of this Agreement, provided that any modification or waiver of any of the terms of this Agreement shall not be effective unless in writing and executed with the same formality as this Agreement.

## BREACH AND WAIVER

Any waiver of any breach or default under this Agreement shall not be deemed a waiver of any subsequent breach or default.

## FURTHER ASSURANCES

The Husband and the Wife shall each execute and deliver promptly on request any additional papers, documents, and other assurances reasonably necessary in connection with the performance of those obligations. In the event that either party fails or refuses to comply with the provisions of this paragraph, the failing party shall reimburse the other party for all losses and expenses including, but not limited to, attorneys' fees and costs incurred as a result of such failure.

## SUBMISSION TO COURT

This Agreement may be submitted by either party to any court before which a petition for the dissolution of the marriage may be pending for approval by the court and for incorporation into final Judgment decreeing the dissolution of the marriage.

## SUBSEQUENT DIVORCE

If any action for divorce is hereafter instituted by either party against the other, this Agreement may, if desired, be submitted to the Court in such action for approval and incorporation in a decree should one be granted; but this Agreement shall be independent of, not merged with, nor dependent for its effectiveness upon such approval or incorporation, nor be otherwise affected thereby.

## RECONCILIATION

The parties recognize the possibility of reconciliation. It is their intention that a reconciliation, temporary or permanent, or a further separation after any reconciliation, shall in no way abrogate or affect the provisions of this Agreement having to do with the settlement and disposition of the property rights of the parties nor their respective real and personal property, as set forth herein.

## DISPUTE RESOLUTION

The parties agree that every dispute or difference between them, arising under this Agreement, shall be settled first by a meeting of the parties attempting to confer and resolve the dispute in a good faith manner. The parties shall attempt to meet together as soon as reasonably practical. If the parties cannot resolve their dispute after conferring, either party may require the other party to submit the matter to non-binding mediation, utilizing the services of an impartial professional mediator approved by both parties. Such mediation shall occur as soon as reasonably practical and neither party shall unreasonably withhold its consent to the appointment of the mediator. The reasonable costs and expenses of the mediator shall be borne equally between the parties. In the event that a dispute between the parties cannot be resolved in the foregoing manner, each of the parties hereby waives its rights to a trial by jury in any action or proceeding arising out of in connection with or in any way pertaining to this Agreement. It is agreed and understood that this waiver constitutes a waiver of trial by jury of all claims against all parties to such action or proceedings, including claims against parties who are not parties to this Agreement. This waiver is knowingly, willingly and voluntarily made by each party.

NOTICES

All written notices and demands that either of the parties gives to the other party in connection with this Agreement, or any to personal service, shall be made by mailing the notice or demand in a sealed envelope addressed to the party, with postage fully prepaid by certified mail, return receipt requested.

Any service to the Husband shall be addressed to him at 6 Hanover ct, Princeton, New Jersey 08540, or another address designated by him in writing to the Wife. Any service to be made on the Wife shall be addressed to her at 5 Hanover Ct, Princeton, New Jersey 08540, or another address designated by her in writing to the Husband.

IN WITNESS WHEREOF, the parties hereto have set their hands and seals to two counterparts of this Agreement, each of which will constitute an original, this _____ day of September, 20____.

_____
Elijahu Litvak, Husband

_____
Helena Litvak, Wife

# Addendum

## to the

## Marital Separation and Property Settlement Agreement

## between

## Elijahu Litvak and Helena Litvak

On this 15th day of December, 2011, the Husband, Elijhau Litvak, and the Wife, Helena Litvak, hereby agree to the following Addendum to the Marital Separation and Property Settlement Agreement entered on September 14, 2006, with the understanding that the Settlement Agreement is valid and controlling on all issues not addressed below.

### ARTICLE 1

1.1.    Life Insurance: Husband shall maintain a fifteen (15) year level premium term life insurance policy to ensure his obligation to the minor child, Alice Litvak (D.O.B. April 21, 2011), until the time Alice is deemed emancipated. The policy shall have a minimum face value of $250,000, as long as Husband is able to purchase this insurance at a customary rate. Wife shall retain the right to purchase a life insurance policy of $750,000 to secure her alimony claim. Husband shall fully cooperate with the insurance process, and Wife shall be responsible to pay the premiums. Wife may continue the insurance up to Husband's sixty-fifth (65th) birthday, unless alimony has already terminated per the terms of the Settlement Agreement and Addendum.

1.2.    Alimony: Alimony payments shall remain the same as those in Separation agreement.

Husband's alimony payments to Wife shall terminate upon the death of either party or Wife's remarriage. Alimony payments shall be subject to reduction or termination upon Wife's cohabitation with an unrelated adult in a quasi-marital relationship, consistent with all relevant principles stated in Gayet v. Gayet, 92 N.J.149 (1983). The Husband permanently and irrevocably waives any rights that he may have to receive alimony from the Wife. Additionally, alimony is subject to modification under Lepis v. Lepis, 83 N.J. 139 (1980), thus a party may modify if they have experienced a substantial and continuing change in circumstances.

1.3.   Inheritance: Husband guarantees that the parties' daughter, Alice, shall receive at least fifty (50) percent of the Husband's estate, regardless of Husband's having additional children in the future.

1.4.   Credit Card Debt: Husband shall provide Wife with a $10,000 lump sum to pay down Wife's credit card debt. Husband shall also pay $2,000 per month to Wife for a term of twelve (12) months, commencing on the first day in the first month following the entering of the Dual Judgment of Divorce. As to the $24,000 so paid, Husband shall receive an equal credit of $2,000 per month for a term of twelve (12) months, such that his monthly alimony obligation shall be reduced accordingly.

1.5.   Automobile: Wife shall retain automobile and Husband shall promptly transfer title of said automobile to Wife.

1.6.   Travel for Alice: Husband agrees to provide Wife with one (1) transatlantic plane ticket per year for Alice and one (1) domestic ticket per year for Alice, for as long as Husband's business remains viable and Husband continues to accumulate frequent flyer miles. For the first twelve (12) months of the Agreement, while Wife is paying down debts,

2

Husband shall also provide Wife with one (1) transatlantic plane ticket, located in business class.

1.7. <u>Former Marital Home</u>: The parties shall continue to own the former marital home jointly as tenants in common. If the home has tenants or remains empty, Husband and Wife shall be jointly responsible for all costs of maintaining the home, including but not limited to mortgage, insurance, taxes. Both parties shall have the right to occupy the former marital home. If both Husband and Wife wish to reside in the former marital home, Wife shall have the right to exclusive occupancy of the former marital home, along with the child. The party who lives in the former marital home shall be solely responsible for all costs of maintaining the home, as described in this paragraph. The parties shall jointly list the property for sale in the Spring of 2017. The parties shall mutually select a licensed New Jersey Realtor to sell the home. The parties shall follow the Realtor's recommendations for house repair costs and any recommended reductions in listing price. Wife shall retain the right of first purchase refusal on the property. All other terms of the Settlement Agreement related to the former marital home not specifically modified by this paragraph shall remain in full force.

## ARTICLE 2

## FULL DISCLOSURE

2.1   The parties represent that they have accurately set forth all assets and liabilities of the marriage in their respective Case Information Statements exchanged by and between the parties pursuant to <u>R.</u> 5:5-2. Each of the parties certifies hereto that they have made full disclosure of their separate assets and all assets subject to equitable distribution in accordance with <u>N.J.S.A.</u> 2A:34-23 and in accordance with all other laws of the State of

New Jersey, including all debt, loans, liens or any other encumbrances. Their obligations to make full disclosure and the consequences for not making such disclosure have been explained to the parties by their separate and independent counsel. In signing the within agreement, the parties each severally and independently certify that all of the statements of fact made herein are true to the best of their knowledge, information and belief and that in the event any of the statements made herein are willfully false, the party knowingly making such statement is subject to punishment.

2.2    The parties acknowledge that each has produced, during the course of the negotiations leading to the execution of the within agreement, Case Information Statements completed and certified to by each party in accordance with R. 5:5-2 and other documentation pertaining to each parties' financial status, income, expenses, assets and liabilities. Each party represents and certifies to the other the completeness, truthfulness and accuracy of said data, with the understanding that the other party is relying thereon in accepting the terms of the settlement contained herein and execution of the within Agreement.

2.3    The parties acknowledge that discovery has not been completed. Although some discovery has occurred, it is understood by and between the parties that certain aspects of discovery are outstanding. Notwithstanding the foregoing, each party wishes to enter into this agreement and acknowledges that they have been advised that they have the right not to enter into this Agreement until all such discovery is completed.

2.4    The parties represent that each of them has candidly and fully disclosed to other all of their income, assets and liabilities, as of the execution Agreement. Each further warrants and represents that he or she, as the case may be, has been advised by their respective counsel of the right to hire experts, to take depositions, or to use such other tools of

4

discovery as may be available, and each party has agreed to waive the right to complete formal discovery proceedings. Both parties further acknowledge that they have been advised of the risks inherent in such a waiver, but they deem the terms and provisions of this Agreement and the guaranteed aspects thereof to be fair and equitable, and that the expenses associated with the completion of formal discovery are unwarranted, and that the disclosure provided by the husband to the wife has been adequate to permit the wife to make an informed and voluntary judgment as to the fairness of this Agreement.

### ARTICLE 3

### WAIVER TO ESTATE AND PROPERTY

3.1    Except as herein otherwise provided, each party may dispose of his or her property in any way and each party hereby waives and relinquishes any and all right he or she may now have or hereafter acquire under the present or future laws of any jurisdiction, to share in the property or estate of the other as a result of the marital relationship, including without limitation dower, curtesy, right to equitable distribution under N.J.S.A. 2A:34-23 (its successors or amendments), statutory allowance, elective share under N.J.S.A. 3B:8-1 et seq. (its successors and amendments), homestead rights, right to take in intestacy, right to take against the Will of the other and right to act as administrator or executor of the other's estate. Each party will at the request of the other, execute, acknowledge and deliver any and all instruments which may be necessary or advisable to carry into effect this mutual waiver and relinquishment of all such interests, right or claims.

### ARTICLE 4

### EXECUTION OF ADDITIONAL DOCUMENTS

4.1    Each of the parties shall, from time to time, at the request of the other, execute,

5

acknowledge and deliver to the other party any and all further instruments that may be
reasonably required to give full force and effect to the provisions of this Agreement.

## ARTICLE 5

## MODIFICATION

5.1    A modification or waiver of any of the provisions of this Agreement shall be effective
only if made in writing and executed with the same formality as this Agreement.  The
failure of either party to insist upon strict performance of any of the provisions of this
Agreement shall not be construed as a waiver of any subsequent default of the same or
similar nature.

## ARTICLE 6

## DIVORCE

6.1    Nothing herein contained shall prevent the Husband or the Wife from maintaining an
action for absolute divorce in any jurisdiction in which either one of them may have the
legal right and desire to do so.  This Agreement shall be offered in evidence in any such
suit, and if acceptable to the Court, shall be incorporated by reference in the decree that
may be granted in such suit.  The decree shall be in conformity with the provisions
hereof, and shall in no respect impair or modify the same.  Notwithstanding such
incorporation, this Agreement shall not be merged in the decree, but shall survive the
same and shall be binding and conclusive on the parties for all time.

## ARTICLE 7

## GOVERNING LAW

7.1    This Agreement shall be construed, governed and adjudicated in accordance with the

laws of the State of New Jersey. Each party hereby represents that they have significant contacts with the State of New Jersey and that said state has a significant interest in the subject of this Agreement. Therefore, not withstanding any future residence or domicile of either party, the laws of New Jersey shall be applied to the interpretation, adjudication. and enforcement of this Agreement, except with regard to the provisions of New Jersey's conflict of law which shall be deemed not in effect for purpose of contract interpretation, adjudication, and enforcement.

## ARTICLE 8

## PARTIAL INVALIDITY

8.1   If any provision of this Agreement is held to be void or unenforceable, all other provisions hereof shall nevertheless continue in full force and effect.

## ARTICLE 9

## NOTICES

9.1   All notices given hereunder shall be sent by certified mail, return receipt requested, duly directed to the parties at their respective addresses hereinabove indicated. Each party shall at all times keep the other informed of his or her place of residence and shall promptly notify the other of any change, giving the address and telephone number of the new place of residence in the manner set forth above.

## ARTICLE 10

## BINDING

10.1   This Agreement shall endure to the benefit of, and shall be binding upon, the parties hereto, their heirs, executors administrators and assigns.

## ARTICLE 11

### VOLUNTARY EXECUTION

11.1    The Wife and Husband each acknowledge that each is voluntarily entering into this

Agreement of his or her own accord and without coercion or pressure of any kind; that all

the provisions of this Agreement, as well as all questions pertinent thereto, have been

fully and satisfactorily explained to them; that each has given due consideration to such

provisions and questions and understands them clearly; that the settlement embodied in

this Agreement is in all respects acceptable to each; being consistent with the income and

assets of the parties, and ample for their reasonable needs; and that accordingly each

consents to all the provisions hereof.

### ARTICLE 12

### ENTIRE AGREEMENT

12.1    This Agreement contains the entire understanding of the parties, and there are no

representations, either oral or written, warranties, covenants, undertakings or promises,

other than those expressly set forth herein.

12.2    It is expressly understood that, notwithstanding the provisions of this Agreement, there

have been no collusive agreements whatsoever made either orally or in writing, or any

representations by one party to the other with respect to the procurement of a divorce, or

restraining or inhibiting the other from contesting or litigating any pending or future

matrimonial causes of action for divorce and/or enforcement of the terms of this

Agreement.

12.3    The parties agree that the terms and provisions of this Agreement are in full and complete

8

satisfaction of any and all claims, which either may have against the other, including their respective rights to equitable distribution under N.J.S.A. 2A:34-23 (its successors and amendments).

## ARTICLE 13

### WAIVER OF TRIAL

13.1  The parties acknowledge having been advised by their respective attorneys that in the event they could not reach agreement as to the issues resolved herein, they would have the opportunity to testify before a Judge, produce witnesses, documentation and any and all relevant evidence before the Judge and that based upon said evidence, plus testimony, the Judge would decide the within issues.  The parties understand that by virtue of entering into this Agreement, they will not have said opportunity and that the resolution of the issues as set forth herein shall control and be binding on both of them.

## ARTICLE 14

### MUTUAL RELEASES

14.1  Subject to the provisions of this Agreement, each party has released and discharged and, by this Agreement, does for himself or herself, and his or her legal heirs, representatives, executors, administrators, and assigns, release and discharge the other of and from all causes of action, claims, rights or demands whatsoever in law or in equity that either of the parties ever had or now has against the other. Any and all causes of action for divorce only and/or post judgment enforcement applications to a court (including applications for counsel fees and costs to be paid by the other party for proven breach of this Agreement and/or Addendum) are not released.  Nothing herein contained shall require either party to renounce or disclaim any gift, devise or bequest which he or she may have been given

9

by the other's will, trust or other document provided that said will, trust or other document postdates the effective date of this Agreement.

## ARTICLE 15

## NON-HARASSMENT

15.1    The parties agree not to molest, disturb or interfere with each other in any manner whatsoever. Each shall be free to live his or her life as if he or she were single and unmarried.

## ARTICLE 16

## COHABITATION AND RECONCILIATION

16.1    If the parties, after the effective date of this Agreement, cohabit regularly, sporadically, or temporarily, or if they reconcile, this Agreement, nevertheless, shall continue, in full force and effect, unless modified, altered, or terminated in accordance with Paragraph 5.1 of this Addendum.

16.2    Prior to the execution of this Agreement, neither party has represented to the other that there is any prospect of reconciliation, and no promises or inducements have been offered by one party to the other in this regard.

## ARTICLE 17

## EFFECTIVE DATE

17.1    The effective date of this Agreement shall be the date the second party executes this Agreement. If the parties sign simultaneously, then, unless otherwise provided, the Agreement is effective immediately.

## ARTICLE 18

### INDEPENDENT COUNSEL

18.1   The Husband retained the Law Offices of Edward R. Weinstein, L.L.C. 214 Highway 18
North, Suite 2A, East Brunswick, New Jersey 08816 to represent his legal interests.  Both
the legal and practical effect of this Agreement in each and every respect was fully
explained to the Husband.

18.2   The Wife retained the Law Offices of Hanan M. Isaacs, P.C., 4499 Route 27 Kingston,
New Jersey 08528 to represent her legal interests.  Both the legal and practical effect of
this Agreement in each and every respect was fully explained to the Wife.

18.3   The parties have been advised by their respective attorneys that their respective attorneys
are not tax advisors nor can they advise their clients as to the tax consequences of the
Agreement.  The parties further acknowledge that their respective attorneys have advised
them to seek independent tax advice as to any tax consequences associated with the
Agreement.

18.4   Each of the parties expressly acknowledges, warrants, and represents that they have
carefully read and have fully understood this Agreement in its entirety, that they each
fully appreciate its meaning and import, and that each have had counsel of their own
choosing in the negotiation, preparation and execution of this Agreement.  Each party
further represents that they have been separately and independently advised and informed
by their counsel of the provisions, legal effect of this Agreement, that it is in full accord
with their complete understanding and desires, and that the same is fair, reasonable,
equitable and satisfactory to them.  Each party further represents that this Agreement has
been entered into voluntarily, and that it is not the result of any undue influence, and that

11

this Agreement constitutes the entire agreement between the parties, and there have been
no oral promises or representations not set forth in this Agreement, and that neither is
relying upon any unstated promises or inducements for the execution hereof.

**ELIJAHU LITVAK**
*Plaintiff*

**KAITLIN KENNEDY, ESQ.**
*Attorney for Plaintiff*

**HELENA LITVAK**
*Defendant*

**HANAN M. ISAACS, ESQ.**
*Attorney for Defendant*

**STATE OF NEW JERSEY :**

                              SS:

**COUNTY OF MERCER    :**

**BE IT REMEMBERED,** that on this 14 Day of December, 2011, before me, an Attorney at Law of the State of New Jersey, personally appeared **ELIJAHU LITVAK,** who, I am satisfied, is the person named in and who executed the within instrument, and thereupon he acknowledged that he signed, sealed and delivered the same as his act and deed, for the uses and purposes therein expressed.

                              KAITLIN KENNEDY, ESQ.
                              Attorney at Law
                              State of New Jersey


**STATE OF NEW JERSEY :**

                              SS:          *See attached Certification of Attorney*

**COUNTY OF MERCER    :**

**BE IT REMEMBERED,** that on this    Day of            0, 2011, before me, an Attorney at Law of the State of New Jersey, personally appeared, **HELENA LITVAK,** who, I am satisfied, is the person named in and who executed the within instrument, and thereupon she acknowledged that she signed, sealed and delivered the same as her act and deed, for the uses and purposes therein expressed.

                              HANAN M. ISAACS, ESQ.
                              Attorney at Law
                              State of New Jersey

14

**HANAN M. ISAACS, P.C.**
4499 Route 27
Kingston, NJ 08528
(609) 683-7400
Attorneys for Defendant

| | |
|---|---|
| ELIJAHU LITVAK, | ) SUPERIOR COURT OF NEW JERSEY<br>) CHANCERY DIVISION-FAMILY PART<br>) MERCER COUNTY |
| Plaintiff, | ) |
| vs. | )<br>) **DOCKET NO. FM-11-516-11-B** |
| HELENA LITVAK, | )<br>) CIVIL ACTION |
| Defendant. | )<br>) **ATTORNEY CERTIFICATION OF**<br>) **FACSIMILE SIGNATURE (R. 1:4-4(c))** |

I, HANAN M. ISAACS, ESQ., hereby certify as follows:

1.    I am an Attorney at Law of the State of New Jersey and I represent the Defendant, Helena Litvak, in the above-entitled action.

2.    Our law office is located at 4499 Route 27, Kingston, New Jersey 08528.

3.    Helena Litvak personally acknowledged to me the genuineness of her signature, which was furnished on the Dual Final Judgment of Divorce, the Marital Settlement Agreement between the two parties, and her Certification filed in support of the uncontested divorce entry.

4.    Upon receipt of original signatures pages, and request of the same by the Court or Plaintiff's attorney, the undersigned will furnish the same to the Court with copy to Plaintiff's attorney.

The foregoing statements made by me are true to the best of my knowledge and belief. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment

HANAN M. ISAACS, ESQ.

Dated: December 14, 2011

# EXHIBIT  B

**PREPARED BY THE COURT**

# COPY

**SUPERIOR COURT OF NEW JERSEY**
**CHANCERY DIVISION –**
**FAMILY PART**
**MERCER COUNTY**

Elijahu Litvak,

        **Plaintiff,**

v.

Helena Litvak,

        **Defendant.**

**FILED**

AUG 26 2015

SUPERIOR COURT OF NJ
MERCER VICINAGE
FAMILY DIVISION

**DOCKET NO. FM-11-516-11B**

**CIVIL ACTION**
**AMENDED ORDER**

      **THIS MATTER** having come before the Court on August 21, 2015, the Honorable

Thomas M. Brown, J.S.C., presiding, on the application of the defendant, Helena Litvak,

represented by Marisa Baker Trofimov, Esq., seeking an order granting relief as stated

in the notice of motion; and the defendant, Elijahu Litvak, represented by Louis Ragone,

Esq., having filed a written response and cross motion; and plaintiff having filed a reply;

and the Court having considered the parties' submissions; and the parties having

requested oral argument, and the Court having issued a tentative order under R. 5.5-

4(e); and the tentative having not been accepted; and the Court having had oral

argument on August 21, 2015; and for the reasons stated on the record; and for good

cause shown;

      **IT IS** on this 26th day of August, 2015:

1)    **ORDERED** that the court schedules this matter for a **Post Judgment ESP** on

        the issue of alimony payments, child support, and the value of her 10%

        interest in Outpost, to take place on **October 21, 2015**. In the event that the

        matter does not settle, the matter shall be heard at a **Plenary Hearing** on

        ***October 22, 2015 at 9:00AM** and both parties shall be present to testify;* and

        it is

2) **FURTHER ORDERED** plaintiff is required to provide discovery, including but not limited to, tax returns for 2014, financial information for 2015, and information directly from Outpost Research and Development, LLC regarding the company and/or company litigation, including speaking to the companies counsel. Defendant shall have the right to serve Notice to Produce and Interrogatory requests on plaintiff, and shall be permitted to take depositions on plaintiff's financial circumstances and depositions regarding his company. The Business Discovery shall be under the attached Protective Order; and it is

3) **FURTHER ORDERED** defendant's request at oral argument for reciprocal discovery is **denied without prejudice**, as not plead; and it is

4) **FURTHER ORDERED** plaintiff shall pay the minimum support amount agreed upon of $4000 alimony and $2500 child support without prejudice until the plenary hearing in accordance with the MSA as amended, defendant's request for alternative payment conditions is denied; and it is

5) **FURTHER ORDERED** that by consent of the parties pending the plenary hearing, defendant shall reside in plaintiff's apartment, and plaintiff shall continue to pay the rent without prejudice pending the Plenary Hearing. Plaintiff shall reside in the former marital home in Princeton that the parties hold as tenants in common; and it is

6) **FURTHER ORDERED** plaintiff shall reimburse the $750 that he withheld as child support for the month of July based on his temporary custody subject to verification that it remains unpaid. This amount to be repaid within ten (10) days; and it is

7)   **FURTHER ORDERED** defendant shall pay for her own experts without prejudice to a final determination. Plaintiff shall be required to cooperate with defendant's experts for the purpose of a business evaluation; and it is

8)   **FURTHER ORDERED** defendant's application for an advancement of counsel fees is **granted in part**. Plaintiff shall advance $10,000 to defendant to pay counsel fees, without prejudice to a final determination of counsel fees; and it is

9)   **FURTHER ORDERED** that defendant's application for plaintiff to pay her counsel fees for motion is **denied**; and it is

10)   **FURTHER ORDERED** defendant's application for sanctions against plaintiff is **denied**; and it is

11)   **FURTHER ORDERED** that plaintiff shall grant defendant online access to the parties' joint mortgage for the property located at 5 Hanover Court in Princeton, NJ; and it is

12)   **FURTHER ORDERED** that plaintiff shall consult with defendant regarding out of state trips he wishes to take the minor child on, and obtain her permission prior to the trip, such permission not to be unreasonably withheld; and it is

13)   **FURTHER ORDERED** defendant's application that the court require only commercial flights be used to transport the child out of state is **denied**.

THOMAS M. BROWN, J.S.C.

Pursuant to R. 1:6-2(f), the Court provides the following Statement of Facts and Conclusions of Law:

## Alimony and Child Support Pending the Plenary Hearing

In making a determination of the alimony pending the plenary hearing the Court must first address the language of the parties PSA. The agreement states regarding both child support and alimony that defendant shall pay a percentage of his gross salary between the floor and ceiling "per month . . . and continuing per month thereafter." The child support provision also states "payments shall also be adjusted each year consistent with the percentage changes in Husband's income from the previous year." The alimony provision states "payments shall be increased annually consistent with the percentage of increases in the Husband's salary from the previous year."

The Court finds that in light of the parties' agreement the change in income alone was to serve as a change in circumstance prompting a change in support within the range of the floor and ceiling provisions without a Court Order. The Court additionally finds that plaintiff has made a *prima facie* showing of changed income. Plaintiff previously in 2014 derived all his income from Outpost. Outpost currently has no profits or income. Plaintiff further certifies to having no additional income.

The Court therefore finds that pending the plenary hearing, a support amount equal to the floor provisions of $4000 alimony and $2500 child support is appropriate.

## Counsel Fees

An award of counsel fees rests in the discretion of the Court. Williams v. Williams, 59 N.J. 229, 233 (1971). The Court must consider the factors established under N.J.S.A 2A:34-23, R. 5:3-5(c), R. 4:42-9, N.J. Rules of Prof. Conduct 1.5(a) [hereinafter R.P.C. 1.5(a)], and case law. Specifically, N.J.S.A. 2A:34-23 states:

4

The court may order one party to pay a retainer on behalf of the other for expert and legal services when the respective financial circumstances of the parties make the award reasonable and just. In considering an application, the court shall review the financial capacity of each party to conduct the litigation and the criteria for award of counsel fees that are then pertinent as set forth by court rule. Whenever any other application is made to a court which includes an application for pendente lite or final award of counsel fees, the court shall determine the appropriate award for counsel fees, if any, at the same time that a decision is rendered on the other issue then before the court and shall consider the factors set forth in the court rule on counsel fees, the financial circumstances of the parties, and the good or bad faith of either party.

R. 5:3-5(c) directs the Court to consider the following factors:

(1) the financial circumstances of the parties;

(2) the ability of the parties to pay their own fees or to contribute to the fees of the other party;

(3) the reasonableness and good faith of the positions advanced by the parties both during and prior to trial;

(4) the extent of the fees incurred by both parties;

(5) any fees previously awarded;

(6) the amount of fees previously paid to counsel by each party;

(7) the results obtained;

(8) the degree to which fees were incurred to enforce existing orders or to compel discovery; and

(9) any other factor bearing on the fairness of an award.

R. 4:42-9 requires attorneys to submit an affidavit of services addressing the factor enumerated by R.P.C. 1.5(a), as well as a statement of fees received. Pursuant 1 R.P.C.1.5(a), the factors to be considered in determining the reasonableness of a fe include the following:

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6)  the nature and length of the professional relationship with the client;

(7)  the experience, reputation, and ability of the lawyer or lawyers performing the services;

(8)  whether the fee is fixed or contingent.

The Court grants an advance of $10,000 in counsel fees to defendant without prejudice to a final determination of counsel fees but denies counsel fees for the current motion. In evaluating the financial situation of the parties, the Court determines that plaintiff has savings that allow him to pay his counsel fees as well as pay defendant's counsel fees, however, without current income, the Court recognizes that plaintiff has limited assets to pay counsel fees as well as support to defendant. Defendant on the other hand will be receiving $13,000 in support over the ensuing two months and has only a $1,900 mortgage payment each month and basic living expenses. The Court finds that defendant can therefore afford to contribute to her counsel fees.

The Court finds that both parties acted in good faith by meeting in an attempt to settle, and making reasonable arguments about the ongoing alimony obligation. Contrary to defendant's assertion, plaintiff's failure to provide 2014 tax returns was not in bad faith as defendant had received the income ceiling, and the FJD provision only provided for tax returns to be submitted to verify increases. Both parties presented reasonable positions on the interpretation of the agreement however, regarding the primary disputed issue plaintiff prevailed. Defendant's motion was to enforce the existing order, but any weight is undermined by the fact that the Court determined that the actions of plaintiff did not violate the agreement.

Based on the above factors, the Court believes that an advance of $10,000 is an appropriate advancement.

6

6a

A-002439-16

# EXHIBIT  C

**Information to identify the case:**

| | | |
|---|---|---|
| Debtor 1 | **Helena Litvak** | Social Security number or ITIN   xxx–xx–3746 |
| | First Name   Middle Name   Last Name | EIN   __ – _____ |
| Debtor 2 | | Social Security number or ITIN   ____ |
| (Spouse, if filing) | First Name   Middle Name   Last Name | EIN   __ – _____ |

United States Bankruptcy Court   District of New Jersey

Case number:   16–20588–KCF

---

# Order of Discharge

12/1

IT IS ORDERED: A discharge under 11 U.S.C. § 727 is granted to:

    Helena Litvak
    aka Helena Glikin

    9/8/16                       By the court:   Kathryn C. Ferguson
                                             United States Bankruptcy Judge

---

### Explanation of Bankruptcy Discharge in a Chapter 7 Case

This order does not close or dismiss the case, and it does not determine how much money, if any, the trustee will pay creditors.

**Creditors cannot collect discharged debts**
This order means that no one may make any attempt to collect a discharged debt from the debtors personally. For example, creditors cannot sue, garnish wages, assert a deficiency, or otherwise try to collect from the debtors personally on discharged debts. Creditors cannot contact the debtors by mail, phone, or otherwise in any attempt to collect the debt personally. Creditors who violate this order can be required to pay debtors damages and attorney's fees.

However, a creditor with a lien may enforce a claim against the debtors' property subject to that lien unless the lien was avoided or eliminated. For example, a creditor may have the right to foreclose a home mortgage or repossess an automobile.

This order does not prevent debtors from paying any debt voluntarily or from paying reaffirmed debts according to the reaffirmation agreement. 11 U.S.C. § 524(c), (f).

**Most debts are discharged**
Most debts are covered by the discharge, but not all. Generally, a discharge removes the debtors' personal liability for debts owed before the debtors' bankruptcy case was filed.

Also, if this case began under a different chapter of the Bankruptcy Code and was later converted to chapter 7, debts owed before the conversion are discharged.

In a case involving community property: Special rules protect certain community property owned by the debtor's spouse, even if that spouse did not file a bankruptcy case.

For more information, see page 2 >

**Some debts are not discharged**
Examples of debts that are not discharged are:

- ◆ debts that are domestic support obligations;

- ◆ debts for most student loans;

- ◆ debts for most taxes;

- ◆ debts that the bankruptcy court has decided or will decide are not discharged in this bankruptcy case;

- ◆ debts for most fines, penalties, forfeitures, or criminal restitution obligations;

- ◆ some debts which the debtors did not properly list;

- ◆ debts for certain types of loans owed to pension, profit sharing, stock bonus, or retirement plans; and

- ◆ debts for death or personal injury caused by operating a vehicle while intoxicated.

Also, debts covered by a valid reaffirmation agreement are not discharged.

In addition, this discharge does not stop creditors from collecting from anyone else who is also liable on the debt, such as an insurance company or a person who cosigned or guaranteed a loan.

> **This information is only a general summary of the bankruptcy discharge; some exceptions exist. Because the law is complicated, you should consult an attorney to determine the exact effect of the discharge in this case.**

# EXHIBIT D



**FILED**

JAN 1 0 2017

SUPERIOR COURT OF NJ
MERCER VICINAGE
FAMILY DIVISION

PREPARED BY THE COURT

| | |
|---|---|
| Elijahu Litvak, | |
| Plaintiff, | |
| v. | |
| Helena Litvak, | |
| Defendant. | |

**SUPERIOR COURT OF NEW JERSEY
CHANCERY DIVISION –
FAMILY PART
MERCER COUNTY**

**DOCKET NO. FM-11-516-11**

**CIVIL ACTION**

**ORDER**

THIS MATTER having come before the Court for a post-judgment plenary hearing on

January 26, 2016 and February 16, 2016, the Honorable Lisa M. Adubato, J.S.C., presiding, and

Plaintiff, Elijahu Litvak, represented by Stark and Stark, P.C., John S. Eory, Esq., appearing, and

Defendant, Helena Litvak, self-represented and having appeared; and the Court having

conducted a plenary hearing on January 26, 2016 and February 16, 2016, with both parties

testifying and presenting evidence; and for the reasons stated on the record on January 26, 2016

and February 16, 2016, and those set forth herein; and for good cause shown;

IT IS on this 10th day of January 2017:

1) **ORDERED** that Plaintiff shall pay Defendant directly $3,500.00 a month in spousal

support, retroactive to August of 2016, in open durational alimony; and it is

2) **FURTHER ORDERED** that Plaintiff shall pay Defendant directly $1,105.00 per month

in child support for the minor child, Alice Litvak (d.o.b. 04/21/2001) based on the

attached child support guidelines; and it is

3) **FURTHER ORDERED** that Plaintiff's application that Defendant be sanctioned for her

violation of the Protective Order dated August 26, 2015 is **DENIED**; however, the

provisions of that Order remain in full force and effect; and it is

1

4) **FURTHER ORDERED** that Plaintiff's application that the $10,000.00 counsel fee advance from Plaintiff to Ms. Trofimov's firm shall be returned to Plaintiff is **DENIED**; and it is

5) **FURTHER ORDERED** that Plaintiff shall continue to maintain health insurance for Defendant for a period of one (1) year from the date hereof, unless Defendant obtains employment which provides health insurance coverage earlier than one year from the date hereof. Plaintiff shall provide health insurance for Alice until she is emancipated; and it is

6) **FURTHER ORDERED** that Defendant shall be responsible for her mobile telephone bills. Plaintiff shall be responsible for Alice's mobile telephone bills; and it is

7) **FURTHER ORDERED** that the 5 Hanover Court property shall be listed for sale within thirty (30) days of this Order. Both parties shall cooperate with all realtors and prospective purchasers. Any proceeds to be distributed in accordance with the parties' MSA, as amended; and it is

8) **FURTHER ORDERED** that the parties shall evenly split any rental income from the marital property located at 5 Hanover Court. Defendant shall provide Plaintiff with a current written accounting of all rental income within 30 days of this Order; and it is

9) **FURTHER ORDERED** that Plaintiff's application for counsel fees is **DENIED**; and it is

10) **FURTHER ORDERED** that Defendant shall be kept updated by counsel for Outpost with regard to developments in any ongoing litigation between Outpost and CompatibL or any matters related thereto.

LISA M. ADUBATO, J.S.C.

2

Pursuant to Rule 1:6-2(f) the Court provides the following Statement of Facts and Conclusions of Law:

## STATEMENT OF FACTS/ PROCEDURAL HISTORY

The parties were married on June 15, 1996 and have one child, Alice, born on April 21, 2001. The parties entered into a Maritial Settlement Agreement dated September 19, 2006 and Addendum dated December 15, 2011 (hereinafter "MSA") and divorced on December 15, 2011. Plaintiff remarried in 2013 and has one child, Daniel, born on March 18, 2015.

In 2005, Plaintiff founded Outpost Research and Development, Inc. (hereinafter "Outpost"), a computer software development company in which he maintains a 90% share. The Defendant, pursuant to the terms of the MSA, owns the remaining 10% interest. Based upon Outpost's success, Plaintiff was able to pay alimony and child support to the Defendant at the maximum levels contained in the MSA, specifically $12,000.00 per month in alimony and $6,000.00 per month in child support. Plaintiff contends that in April of 2015, without warning, a major client of Outpost, CompatibL, terminated its business relationship with the company. CompatibL represented 95% of Outpost's business revenues and the company was unable to continue functioning as it previously had. Outpost remains functionally dormant to date. Plaintiff alleges that his ability to pay child support and alimony in accordance with the terms of the MSA has become impossible.

Shortly after the demise of Outpost, the parties each retained counsel to attempt to reach an agreement regarding support; The parties participated in a four-way settlement conference on May 22, 2015 but an agreement was not reached.  Throughout this period, Plaintiff paid support at the minimum threshold levels designated in the MSA of $4,000.00 per month in alimony and $2,500.00 per month in child support. Defendant filed a Notice of Motion to compel payment of

3

alimony and child support at the maximum levels designated in the MSA, specifically

$12,000/month in alimony and $6,000/month in CS. On August 26, 2015, Hon. Thomas M.

Brown, J.S.C. denied the Defendant's motion, having found that Plaintiff had made a *prima facie*

showing of changed circumstances. The Court ordered a plenary hearing with respect to the

Plaintiff's future alimony and child support obligations and a determinations of the Defendant's

10% interest in Outpost[1]. Judge Brown's order obligated Plaintiff to continue paying alimony

and child support at the minimum threshold levels of the MSA, without prejudice, pending the

outcome of the plenary hearing.

The Court heard testimony during the plenary hearing regarding the parties' ability to

earn income and at what levels. The fairness of a support award is dependent on the accurate

determination of a parties' income. If the court finds that either party is without just cause

voluntarily underemployed or unemployed it shall impute income to that party. Appendix IX-A

(12) of the Child Support Guidelines. Plaintiff credibly testified that he had received

employment offers from two sources, and that he would be able to accept both jobs, such that he

would have a prospective gross salary of $170,000 per year. The Court finds this a reasonable

amount to imput as an income to Plaintiff based on the evidence presented. Defendant claimed

to have been seeking employment but had not yet attained any paying positions. She has been

working as an unpaid intern with My Greater Life Productions in NYC. Defendant was

questioned regarding her LinkedIn profile, wherein she claims to be a Talent Manager and a

Wardrobe Stylist. Further, Defendant is multi-lingual (English, Russian, Belarusian and French)

and has obtained Associate's Degrees in Business Administration and Management, and in

Aeronautics/Aviation/Aerospace Science and Technology. Based on the wage compendium, the

---

[1] The Court notes that neither party retained an expert with regard to a valuation of Outpost.

4

entry level income for a positions a wardrobe stylist in NYC range is $43,900. In light of the

Defendant's stated experience and education, and her claim of having "vast experience and

knowledge of designer clothing, fabrics, and accessories", the request of Plaintiff to impute

Defendant at an annual income of $40,000 is reasonable. Thus, for alimony and child support

purposes, Plaintiff shall be imputed an income of $170,000 annually, and Defendant shall be

imputed an income of $40,000 annually.

## ALIMONY/CHILD SUPPORT

The equitable power of the Court to modify alimony and support orders at any time is

specifically recognized by N.J.S.A. § 2A:34-23, which provides that "[o]rders... may be revised

and altered by the court from time to time as circumstances may require." The analytical

framework to obtain a review and modification of a support obligation is posed upon a showing

of changed circumstances of one or more of these considerations. Lepis v. Lepis, 83 N.J. 139

(1980). This analysis is the same regardless of whether the support obligation was derived from

judicial decree or a consensual agreement[2]. Id. at 148. The party seeking modification has the

burden of demonstrating a change in circumstances warranting relief from the support or

maintenance obligations. Id. at 157; Martindell v. Martindell, 21 N.J. 341, 353 (1956). Upon

such a showing, a court may order discovery and hold a hearing to determine the supporting

spouse's ability to pay. Ibid.

Courts have recognized "changed circumstances" that warrant modification in a variety

of settings. Of relevance to this matter, the courts have consistently held that an "increase or

decrease in the supporting spouse's income" may qualify as such "changed circumstances" to

---

[2] The Addendum to the parties' Marital Settlement Agreement provides as follows: "Additionally, alimony is
subject to modification under Lepis v. Lepis, 83 N.J. 139 (1980), thus a party may modify if they have experienced a
substantial and continuing change in circumstances." ¶1.2

5

warrant a review and modification of the supporting spouse's support obligation(s). Lepis, 83
N.J. at 151; See also Martindale, supra, 21 N.J. at 355.

When an alimony order is reviewed, the primary factors assessed to determine whether
the former marital standard of living is being maintained are: "the dependent spouse's needs, that
spouse's ability to contribute to the fulfillment of those needs, and the supporting spouse's
ability to maintain the dependent spouse at the former standard." Lepis, supra, 83 N.J. at 152.
The decision to modify a child support order requires an examination of the child's needs and the
relative abilities of the spouses to provide for those needs. *Id.* Other criteria include whether the
change in circumstance is likely to be continuing and whether the agreement or decree explicitly
provided for the change. *Id.* Temporary circumstances are an insufficient basis for modification.
As set forth above, Judge Brown in a previous order already determined that Plaintiff had
established a change in circumstances and thus the plenary hearing was held to determine the
proper levels of support based on this change.

With regard to Defendant's needs, Defendant's CIS submitted for the plenary hearing
claims Schedule A, B and C expenses that total $8,846. The court notes that $1,000 of that
amount is allocated for tax reserve, which was not disclosed as part of the marital lifestyle.
Further, the mortgage payment of $1,938 claimed by Defendant will no longer be an expense
upon the sale of the marital home. Defendant's imputed income of $40,000 results in an
assumption of $3,333 gross per month. With regard to child support, the attached CS guidelines,
with the same incomes utilized as for the alimony calculation, results in the monthly child
support amount of $1,105. Combining the imputed income with the support to be paid by
Plaintiff ($3,500/month alimony plus $1,105/month in CS= $4,605 which annualized equates to
$55,260/year) means that pre-tax, Defendant should have monthly income available to her of

$7,938.00. This does not include whatever income Defendant has been receiving from renting the marital home, which she neglected to include in her CIS. As set forth above, combined with the alimony, that amount is sufficient to meet the needs of Defendant and of the parties' daughter.

While it is true that *pendente lite* awards are subject to retroactive modification, Mallamo v. Mallamo, 280 N.J. Super. 8 (App. Div. 1995) such modification is at the discretion of the court, and same is not a hard and fast rule. If the court were to make the award retroactive to August 26, 2015, (the date of the amended *pendente lite* order entered by Judge Brown) as requested by Plaintiff, that determination would result in a credit to Plaintiff of over $34,000, based on the difference between the $6,500/month PL Order (combined alimony and CS) and the $4,605/month current Order. The delay in the opinion being issued, and the increase in the credit as a result, should not be solely assumed by Defendant. The court finds it equitable to make the award retroactive to August of 2016, thus resulting in a credit to Plaintiff of $11,370.00, which shall be recouped by reducing the alimony award by $210 per month for 54 months. The payment schedule may be adjusted by agreement of the parties (if, for example, Defendant wishes to pay sooner or in a lump sum; the last payment shall be adjusted so as to reach to full amount due).

### DEFENDANT'S INTEREST IN OUTPOST

As noted above, there was nothing presented by either party at the hearing to allow the Court to render an opinion with regard to the value of Outpost. Both parties were aware that this valuation was part of the scope of the plenary hearing since at least as early as August of 2015, pursuant to Judge Brown's PL Order. The Court shall not engage in random speculation as to the value of Outpost; however, as set forth herein, Defendant is to be kept apprised of the

7

developments with regard to any litigation involving Outpost until such litigation/settlement of issues is reached.

## SANCTIONS

Plaintiff claims that Defendant violated the Protective Order dated August 26, 2015, regarding the issues in the ongoing Outpost litigation referenced above. Defendant was seeking certain discovery of the business, and Plaintiff requested a Protective Order when the Court granted Defendant's discovery request. That Order sets forth, in relevant part, as follows:

ORDERED that the above discovery has been granted to the defendant with the understanding that the information obtained therefrom is to be used only in the pending MSA enforcement matter and may not be used in any other matter without the express written permission of the Court; and it is

FURTHER ORDERED that this information shall not be disclosed to any other person for any reason, nor may it be disseminated or made public by any means, direct or indirect, without the express written permission of the Court; and it is

FURTHER ORDERED that the use of information obtained from the reports for any purpose other than set forth by the Court, shall be a violation of this Court Order and subject to sanctions.

During the plenary hearing, there was testimony that Defendant sent information to a friend in London to create a PDF document of trial exhibits for use at the plenary hearing. Defendant did not deny that she asked her friend to assist her, and that in doing so, had potentially exposed information obtained during discovery that might be covered by the Protective Order. Plaintiff asks for sanctions based on this alleged violation.

At the hearing, there was a significant amount of time spent on this issue. Neither party suggested that the friend who received the information was in any way likely to utilize it for a nefarious purpose. Based on the testimony of both parties, and the lack of proofs provided to indicate either the scope of any actual breach that occurred or even the suggestion of any damages from such alleged breach, the Court concludes that sanctions would be inappropriate for

what is, at best, a *de minimis* violation. Defendant, however, is cautioned that the Protective Order remains in full force and effect, and she is not to consider the Court's opinion in this one instance to give her free rein to violate the Protective Order. Indeed, she is now on notice that even a minor violation going forward may well provide a valid reason for sanctions, and she should be guided accordingly.

Plaintiff also requests sanctions against Defendant for an alleged violation of the Addendum to the MSA, specifically the provision regarding non-harassment. Plaintiff testified that he retained an attorney in 2013 to send a cease and desist letter to Defendant regarding alleged insults to Plaintiff and his current wife, and threats to file false complaints to the police. Plaintiff also claimed that Defendant continues to threaten him. However, there was nothing presented by way of proofs to substantiate these allegations. While the letter from Plaintiff's counsel lends credence to Plaintiff's concerns over this issue, same was not proof of acts committed by Defendant. Without at least some modicum of additional evidence, the Court will not impose sanctions on Defendant for these alleged violations.

## COUNSEL FEES

An award of counsel rests in the discretion of the Court. Williams v. Williams, 59 N.J. 229, 233 (1971). The Court must consider the factors established under N.J.S.A 2A:34-23, R. 5:3-5(c), R. 4:42-9, N.J. Rules of Prof. Conduct 1.5(a) [hereinafter R.P.C. 1.5(a)], and case law. Specifically, N.J.S.A. 2A:34-23 states:

> The court may order one party to pay a retainer on behalf of the other for expert and legal services when the respective financial circumstances of the parties make the award reasonable and just. In considering an application, the court shall review the financial capacity of each party to conduct the litigation and the criteria for award of counsel fees that are then pertinent as set forth by court rule. Whenever any other application is made to a court which includes an application for pendente lite or final award of counsel fees, the court shall determine the appropriate award

9

for counsel fees, if any, at the same time that a decision is rendered on the other issue then before the court and shall consider the factors set forth in the court rule on counsel fees, the financial circumstances of the parties, and the good or bad faith of either party.

R. 5:3-5(c) directs the Court to consider the factors set forth therein, and R. 4:42-9 requires attorneys to submit an affidavit of services addressing the factors enumerated by R.P.C. 1.5(a), as well as a statement of fees received. The disparity in the parties' incomes weighs heavily in the decision of the court to deny the award of fees to Plaintiff, especially when combined with the lack of a finding of bad faith on the part of Defendant. With regard to the denial of the return of the $10,000 non-prejudicial counsel fee mandated by Judge Brown's amended Order, Plaintiff's position that Defendant's utilization of a portion of those fees for services not incurred specifically for the plenary hearing should require the return of the $10,000 is rejected. There is nothing in the Amended Order that requires those fees be utilized solely for the plenary hearing.

10

# EXHIBIT  E

# EXHIBIT  F



COPY

PREPARED BY THE COURT

FILED

MAY 19 2017

SUPERIOR COURT OF NJ
MERCER VICINAGE
FAMILY DIVISION

| | |
|---|---|
| ELIJAHU LITVAK, | SUPERIOR COURT OF NEW JERSEY |
| Plaintiff, | CHANCERY DIVISION – FAMILY PART |
| v. | MERCER COUNTY |
| HELENA LITVAK, | DOCKET NO. FM-11-516-11L |
| Defendant. | CIVIL ACTION |
| | ORDER |

THIS MATTER having come before the Court on May 19, 2017, the Honorable Robert Lougy, J.S.C., presiding, on the application of defendant, Helena Litvak, a self-represented litigant, for relief as stated in two Notices of Motion filed within days of one another; and plaintiff, Elijahu Litvak, a self-represented litigant, having filed opposition; and defendant having filed no reply; and the Court having denied defendant's application to proceed as an indigent litigant by way of Order dated April 27, 2017; and plaintiff having requested oral argument; and the Court having determined same necessary for its consideration of the claims for relief asserted; and for good cause shown:

IT IS on this 19th day of May 2017, **ORDERED** that:

1.    Defendant's application for an order enforcing litigant's rights with respect to plaintiff's child support obligations is **DENIED** without prejudice.

Page 1 of 3

2.   Defendant's application for an order directing that the plaintiff's spousal support obligation be paid through wage garnishment by the Mercer County Probation Department is **DENIED** without prejudice.

3.   Defendant's application for an order directing that the plaintiff's child support obligation be paid through wage garnishment by the Mercer County Probation Department is **DENIED** without prejudice.

4.   Defendant's application for an order enforcing litigant's rights and directing compliance with Paragraph 10 of the Order, dated January 10, 2017, which required that "defendant be updated by counsel for Outpost with regard to developments in any ongoing litigation between Outpost and Compatible, or any matters related thereto," is **GRANTED**.

5.   Defendant's application for an order enforcing litigant's rights and compelling plaintiff to pay $16,544 in child support and spousal support payments that he withheld in violation of prior orders of this Court is **DENIED**.

6.      Plaintiff's numerous claims for relief are **DENIED** without prejudice, as he

failed to submit a Notice of Cross-Motion, as required by R. 1:6-2 and R. 5:5-

4.[1]

ROBERT LOUGY, J.S.C.

---

[1] Among other claims that plaintiff raised in his certification is a request for a temporary restraining order based upon allegations of domestic violence. If plaintiff feels he needs the protections afforded by a temporary restraining order, he needs to seek a temporary restraining order in the appropriate jurisdiction. Given the absence of a Notice of Cross-Motion, the Court need not resolve whether it would have jurisdiction over any act of domestic violence alleged in plaintiff's certification. See, e.g., N.J.S.A. 2C:25-28 ("A plaintiff may apply for relief under [the New Jersey Prevention of Domestic Violence Act] in a court having jurisdiction over the place where the alleged act of domestic violence occurred, where the defendant resides, or where the plaintiff resides or is sheltered, and the court shall follow the same procedures applicable to other emergency applications.")

Litvak v. Litvak
May 19, 2017
Page 3 of 3

# EXHIBIT  G



**FILED**

JUL 07 2017

SUPERIOR COURT OF NJ
MERCER VICINAGE
FAMILY DIVISION

PREPARED BY THE COURT

| | |
|---|---|
| ELIJAHU LITVAK, | SUPERIOR COURT OF NEW JERSEY |
| | CHANCERY DIVISION – |
| Plaintiff, | FAMILY PART |
| | MERCER COUNTY |
| v. | |
| | DOCKET NO. FM-11-516-11L |
| HELENA LITVAK, | |
| | CIVIL ACTION |
| Defendant. | |
| | ORDER |

**THIS MATTER** having come before the Court on July 7, 2017, the Honorable Robert Lougy, J.S.C., presiding, on the application of plaintiff, Elijahu Litvak, appearing as a self-represented litigant, seeking relief as stated in the Notice of Motion; and defendant, Helena Litvak, appearing as a self-represented litigant, having filed opposition; and plaintiff having filed a reply; and defendant having submitted a sur-reply without leave of the Court that, even upon consideration, does not assist the Court's disposition of plaintiff's claims for relief; and the Court having denied defendant's application to proceed as an indigent litigant by way of Order dated April 27, 2017; and neither party having requested oral argument; and the Court having determined same unnecessary for its consideration of the claims for relief asserted; and for the reasons stated on the record on the date of this Order; and for good cause shown:

**IT IS** on this 7th day of July 2017, **ORDERED** that:

1. Plaintiff's application for an order imposing sanctions on defendant is **DENIED** without prejudice.

2. Plaintiff's application for an order enforcing litigant's rights and compelling defendant to comply with Paragraph 8 of the Order dated January 10, 2017, is **GRANTED**. Per the January 10, 2017 Order, plaintiff is entitled to an equal share of "any rental income from the marital property located at 5 Hanover Court." As of the date of filing of plaintiff's motion, defendant owed him $7,937. Defendant shall pay plaintiff his equal share of past rental income in 24 equal, monthly installments of $330.50 per month.

3. To the extent that defendant continues to generate rental income from the marital property, this is a continuing obligation.

4. Plaintiff's application for an order constraining defendant's ability to travel out of the country with the parties' daughter is **GRANTED**, and same shall be mutual. Neither party may leave the country with the parties' child without a signed, notarized authorization from the other party or an Order of this Court.

5. Defendant shall comply with the provisions of the parties' Marital Settlement Agreement and refrain from molesting, interfering, or disturbing plaintiff, and same shall be mutual.

6. Plaintiff's application for restraints against defendant beyond those memorialized in the parties' Marital Settlement Agreement is **DENIED without prejudice**.

7. Plaintiff's application for fees and costs associated with his present application is **GRANTED**, with respect to filing fees. Defendant shall pay plaintiff $50 within 30 days of this Order.

Litvak v. Litvak
July 7, 2017

8.      To the extent that defendant's certification asserts any affirmative claims for

relief, those claims are **DENIED** without prejudice.

_____
ROBERT LOUGY, J.S.C.

**Certification of Service:**

**The Hearing** 10/17/2017

**Copy sent via certified mail to**

KML Law Group
Denise Carton
216 Haddon Avenue Ste 406
Westmont NJ 0818

Andrea Dobin
427 Riverview Plaza
Trenton NJ 08611